BURGIN *et al.* v. SCOTT.[*]

(Division B. April 19, 1926.)

[107 So. 767. No. 25673.]

SALES.

In action for breach of express warranty in quality of hay purchased by plaintiff after inspection evidence as to warranty *held* insufficient to present question for jury.

---

[*]Corpus Juris-Cyc. References: Sales 35 Cyc., p. 481, n. 79.

APPEAL from circuit court of Lowndes county.
HON. J. I. STURDIVANT, Judge.

Action by S. A. Scott against C. B. Burgin and others. Judgment for plaintiff, and defendants appeal. Reversed and judgment rendered.

*D. A. Burgin,* for appellant.

A peremptory instruction should have been granted. The testimony in this case is insufficient, as a matter of law, to show a contract of warranty, as it clearly appears from the testimony that the intention of the parties was to effect a sale only upon inspection of the hay by the buyer.

Both parties testify that a pretty thorough inspection of the hay was made, Mr. Scott testifying that he, Scott, thought the hay would grade No. 1. That Scott relied solely upon his own judgment in purchasing this hay is shown further by the fact that Scott stipulated that he would ''take the hay based on inspection f. o. b. cars at Mayhew.'' The testimony of these two witnesses is *not in conflict,* and to our mind shows a clear intention of the contracting parties, on the one part to sell and on the other part to purchase this hay only after an inspection was made by the buyer.

It does not appear from the record that Mr. Scott did in fact inspect this hay when loaded on the cars; but it is a fact that he had an opportunity for so doing. When he failed to inspect, he thereby waived inspection; and by his failure to inspect the hay as delivered on the cars, having had an opportunity so to do, in law he must be considered as having accepted the hay as tendered. *Watkins* v. *Guthrie,* 38 So. 370.

*Loving & Loving,* for appellee.

This case turns on a question of fact and the jury having passed upon the fact, the case would naturally stand upon the finding of the jury, unless the finding is manifestly wrong, and we insist that this finding is not manifestly wrong.

It is true, from the record, that this hay, in a certain way, was inspected by the appellee and the record shows that he took the statement of the appellants, or one of them, as a fact that all the hay in the barn, the outer part

of which was inspected by him, was the same kind of hay. It is a matter of common knowledge that a barn filled with hay can only be partially inspected and that one cannot tell anything about what the hay is from the outside. There are some references to the fact that this hay was to be inspected f. o. b. the cars, but that is no evidence whatever that the appellee had any opportunity whatever to inspect the hay f. o. b. the cars.

The hay was loaded and shipped out without any notice whatever to the appellee that the hay was loaded and ready for inspection. Consequently, the sale must be determined by the outward inspection by the appellee and the representation of the appellants that all the hay was of the same kind of grade as the hay that could be seen by the appellee.

ANDERSON, J., delivered the opinion of the court.

The appellee brought this action in a court of the justice of the peace of Lowndes county against appellants to recover of them damages in the sum of one hundred ten dollars and thirty-four cents, claimed to have been suffered by him on account of the alleged breach by appellants of an express warranty of the quality of three carloads of hay bought by appellee from appellants. There was a trial and judgment for the appellants in the court of the justice of the peace, from which judgment appellee appealed to the circuit court, where there was a trial *de novo* resulting in a judgment for appellee for one hundred three dollars and sixty-four cents. From that judgment appellants prosecute this appeal.

Appellee bought three carloads of Johnson grass hay from appellants, which, at the time of the purchase, was situated in the barn of the appellants about a mile from Mayhew. Negotiations leading up to the purchase of the hay took place in West Point. Appellee's contention is that appellants warranted the hay to be No. 1 Johnson grass hay and merchantable, while the fact was that much of it was unsound and unmerchantable. Ap-

pellants' position is that the hay was sold on appellee's inspection without any warranty of kind or condition on the part of the appellants. At the conclusion of the evidence both parties moved for a directed verdict. Both motions were overruled, and the case was submitted to the jury on instructions. There was a verdict and judgment in appellee's favor.

As we view the evidence, there was no question of fact for the jury to determine. We think appellee's testimony, given in his own behalf, shows without conflict that he bought the hay relying on his own inspection at appellant's barn, and his own inspection further to be made at Mayhew when appellants should deliver the hay there for shipment on the Mobile & Ohio Railroad.

Appellee's testimony bearing on the question of express warranty was as follows: Asked about the negotiation for the purchase by him of the hay, he said:

"A. Up in West Point, along about the 12th or 15th of December, Mr. Burgin, this gentleman here, I do not know his initials—

"Q. Which one? A. This gentleman here—approached me in a garage there.

"Q. What year was that? A. 1921; and I asked him about Johnson grass hay, and he said he had some good hay, and I told him I would like a chance to buy his hay. I went down to Mayhew and went out to his barn about a mile west of Mayhew; he had a big crib full to the top with hay. I looked his hay over on one side—we could go in there—and the hay looked nice; I would call it No. 1 hay; and I asked Mr. Burgin what he wanted for it; he said he didn't know; I thought eleven dollars was about the price for that class of hay.

"Q. Eleven dollars for what? A. And he said that would be acceptable, and I ask him if he had any other hay in the barn, any lower grade hay, if all this hay would run the same, and he assured me it would, and I told him I would take the hay based on inspection f. o. b. cars at Mayhew, and I would give him shipping instructions, and I went back and sent in my shipping instruc-

tions, and he loaded the hay about December 21, 1922. . . .

"Q. What would you say would be the amount of that hay that you actually inspected? A. Well; I judge —I do not know just how many bales you might stack on the outside, the top—we could not see much on the top, it was pretty close to the roof; on the south side seemed to be an opening—I would say about two hundred bales, perhaps three hundred bales.

"Q. Were those separated or were they stacked? A. They were stacked closely together in the barn.

"Q. Did you go on the inside of any of them? A. No, sir.

"When you made this deal you say it was with Mr. T. A. Burgin? A. Yes.

"Q. The other two gentlemen are not known in it at all? A. No, sir.

"Q. Or rather, they had nothing to do with the transaction? A. So far as I know they did not.

"Q. When you made this deal with him, was all of this hay that you bought warranted to be sound and in good merchantable condition?

A. I asked Mr. Burgin if his hay in the barn there would run as I had inspected it, and he assured me that it would, and I based my purchase and transaction on the inspection that I made; I had to rely—

"Q. When you made these sales—when you sold this hay to these different people—did you make these sales on the inspection that you made? A. I based the sales of the hay on the quality of the hay and kind of hay that I saw in the man's barn.

"Q. And also the representations made to you by Mr. Burgin? A. Yes; I relied on that; of course, as to the quantity in the barn, I presumed he had three cars; I believed it was all the same grade of hay.

"Q. And the quality of it all? A. Yes, sir."

We think taking appellee's testimony in his own behalf most strongly in his favor means that in purchasing the hay from appellants he acted on no representations

made by them, but rather on his own inspection made at the barn of the appellants and the inspection which he intended to make when appellants should deliver the hay at Mayhew for shipment. He admits in his testimony that he stated to the member of appellants' firm with whom he dealt for the hay that he "would take the hay based on inspection f. o. b. cars at Mayhew and would give shipping instructions." Appellee did give shipping instructions in writing directing appellants when to deliver the hay at Mayhew for shipment. It is true that when the hay was delivered by appellants for shipment it was not further inspected by appellee. But that was not the fault of appellants. Although appellants represented that the hay was No. 1 Johnson grass hay and merchantable, appellee did not act on that statement. He was not willing to do so, because he inspected the hay at the barn in order to ascertain its quality, and furthermore reserved the right to inspect it further and finally when appellants should deliver it at Mayhew for shipment.

We are of the opinion that there was no warranty of the quality of hay by appellants; that the appellee inspected the hay and relied on his own inspection. We see no question for the jury as to the issue of warranty.

It follows, therefore, that the trial court should have directed a verdict for the appellants.

Reversed, and judgment here for appellant.

*Reversed.*